IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RODERICK WHITE**                                                         **PLAINTIFF**
**ADC #092057**

v.                              No: 4:22-cv-00613 PSH

**LERIZZA NUNAG,** *et al.*                                               **DEFENDANTS**

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Roderick White, an inmate at the Cummins Unit of the Arkansas Division of Correction (ADC), filed a complaint pursuant to 42 U.S.C. § 1983 on July 1, 2022 (Doc. No. 2) and an amended complaint on July 27, 2022 ("Amended Complaint) (Doc. No. 4). White alleges that defendants APN Lerizza Nunag and APN Rose Newby (the "Defendants") canceled his prescriptions for pain medication in retaliation for grievances he filed against them, and also alleges that they were deliberately indifferent to his serious medical needs by denying him effective pain medication. *See* Doc. No. 4. The Court granted White's application to proceed *in forma pauperis* and ordered service on Nunag and Newby (Doc. Nos. 3 & 6).

White moved for an emergency temporary restraining order requiring the Defendants to provide him effective pain medication (Doc. No. 5). Defendants filed a response (Doc. No. 12). Because the Defendants were notified of White's motion and have responded, White's motion for a temporary restraining order is treated as

a motion for preliminary injunction. *See* Fed. R. Civ. P. 65(b) (providing for *ex parte* temporary restraining orders of limited duration).

The Court held an evidentiary hearing on White's motion on November 15, 2022. A transcript of that hearing has been docketed ("*Transcript*") (Doc. No. 33). White testified in support of his motion. The Defendants called Dr. Thomas Braswell to testify, who offered expert testimony regarding White's medical condition and the medications he has been provided. A copy of Dr. Braswell's CV was introduced as Exhibit A. White's medical records from the Cummins Unit from March 31, 2021, through May 28, 2022, were subsequently filed under seal (the "*Medical Records*") (Doc. No. 25). The Court ordered Defendants to produce a copy of the report of Doug Hassenpflug, O.D., from his encounter with White on April 1, 2021, but they responded that they did not have a copy of that report. *See* Doc. No. 31. They filed additional records for White from April 2021 in response. *Id.*

### I. Testimony & Documentary Evidence

White suffers from severe glaucoma caused by uveitis. *Amended Complaint* at 6; *Transcript* at 40. He lost vision in his left eye and now has a prosthetic eye. *Medical Records* at 2. He had two periorbital pumps surgically implanted behind his right eye to control the pressure in that eye. *Amended Complaint* at 6; *Transcript* at 12. White testified that the pressure and glaucoma in that eye is now well-controlled, but he suffers horrible pain due to the pumps which he believes are pressing on a

nerve. *Transcript* at 10. Dr. Braswell testified that these pumps can cause pain for some people.[1] *Id.* at 57. The Defendants do not claim that White is not suffering from pain related to the pumps.

While an inmate in the ADC, White was prescribed and took the opiate drug tramadol for his eye pain for a number of years before he was transferred to the Cummins Unit in 2021.[2] *Transcript* at 12. On March 31, 2021, after transfer to Cummins, APN Newby saw White for a medication renewal visit. *Medical Records* at 2. She noted he complained of eye pain since 2012 related to glaucoma. *Id.* Newby's notes state that White described the pain as "shooting, intermitted, nerve pain." *Id.* She also noted his long-term use of tramadol and that the medication was not controlling his pain. *Id.* Newby's assessment included "Medication Overuse." *Id.* She described White as disgruntled and argumentative. *Id.* Newby chose not to renew White's prescription for tramadol, which was set to expire on April 6, 2021. *Id.* She documented that White had an optometry appointment the next day with Dr. Hassenpflug, and informed White he could use Naproxen, a nonsteroidal anti-

---

[1] Dr. Braswell also noted that Dr. Hassenpflug noted in an August 2022 examination of White that White had a "legitimate reason for chronic eye pain due to multiple glaucoma surgeries" but had no pain while on gabapentin and tramadol. *Transcript* at 56.

[2] It appears that White's prescription for tramadol was for 50 mg two times a day. *Medical Records* at 2. White testified he had taken tramadol for two years but his medical records indicate he was on the drug for more than nine years. *Transcript* at 12; *Medical Records* at 2.

inflammatory drug, for pain or discomfort. *Id.* It appears that Newby's plan included requesting evaluation of the continued use/need for tramadol related to White's eye pain. *Id.*

Newby saw White again on April 1, 2021, after his optometry appointment.[3] *Medical Records* at 2. Newby's record noted White's continuing complaints of right eye pain described as "constant, burning, shooting, nerve pain." *Id.* She described that White may have become intolerant to tramadol due to its prolonged use, and offered for him to try another medication more suitable for nerve pain. *Id.* White agreed, and Newby prescribed 300mg of gabapentin twice a day. *Id.* Newby again described White as argumentative. *Id.* White testified that this dosage of gabapentin did not control his pain. *Transcript* at 15.

On April 28, 2021, APN Nunag saw White at sick call. *Medical Records* at 3. White complained of right eye pain and stated he had been hit in the right eye two weeks prior. *Id.* Nunag increased White's gabapentin prescription to 300 mg three times a day pending approval. *Id.* White testified that the increased dosage worked better. *Transcript* at 15.

On June 2, 2021, White was seen by Newby for a medication renewal. *Medical Records* at 4-5. She noted that White wanted a medication increase and

---

[3] The medical records produced by the Defendants do not contain the optometrist's notes related to that visit; Defendants maintain they are not in possession of the report. Doc. No. 31.

4

complained about not receiving narcotics for his pain. *Id.* He complained of constant, burning, shooting nerve pain, and reported that the gabapentin was ineffective in managing his pain. *Id.* Newby noted White was argumentative and using profanity, stating he had no "fucking problems until YOU took me off my Tramadol and I fucking need it." *Id.* She also found that there was no clinical indication for an increase in gabapentin, but did not explain why continued pain was not such a clinical indication. *Id.* The visit was ended due to White's use of profanity and inappropriate behavior, according to Newby. *Id.*

White had a sick call visit with Nunag on June 14, 2021. *Medical Records* at 5. He complained of right foot pain and his continuing eye pain. *Id.* He requested naproxen for his foot pain and tramadol for his eye pain. *Id.* Nunag continued White's prescription for 300 mg gabapentin three times a day and added a prescription for naproxen "for pain management as well." *Id.* Nunag described White as irritable. *Id.*

On July 7, 2021, Dr. James Beck, a non-party, saw White at sick call. *Medical Records* at 5-6. White again complained of eye pain and reported that the pain had not improved with the current dosage of gabapentin. *Id.* Although the medical record is unclear, it appears that Dr. Beck gave a verbal order to increase White's gabapentin prescription to 600 mg three times a day due to his continued complaints of right eye pain. *Id.* The notes also document Dr. Beck's recommendation for an

opthalmology consult. *Id.* Newby spoke with White briefly on July 13, 2021, at his cell door about "medication order error." *Id.* at 6. White continued to complain of "constant, sharp, shooting right eye pain." *Id.* While not a model of clarity, the record suggests that staff had not implemented the increased dosage of gabapentin ordered six days earlier, but the error was being corrected on that date. *Id.* Newby documented that White was cooperative and in agreement with the change. *Id.*

White saw Dr. Hassenpflug on July 28, 2021.[4] *Medical Records* at 15. Unfortunately, because his handwriting is very difficult to read, his notes from that visit are hard to construe. The Court interprets the record as ordering a refill of 50 mg of tramadol two times daily, although White had been taken off tramadol April 1 and had been taking 600 mg of gabapentin three times daily since July 13. *Id.* The report recommends follow up in three months. *Id.* Nunag reviewed his report on August 14, 2021 (seventeen days after the optometry visit), and again on August 17, 2021 (twenty days after the optometry visit). *Id.* at 6-7. She did not make note of Dr. Hassenpflug's refill order for tramadol and did not reach out to him about the order, although she stated "see Tx order and scripts." *Id.* at 7. Nunag's report only

---

[4] It is unclear whether this exam was intended to satisfy Dr. Beck's recommendation for an opthalmology consult. The Court notes that Dr. Hassenpflug is an optometrist, not an opthalmologist. The records provided to the Court do not document an opthalmologist consult/visit during the relevant time period.

documented his order that White receive mild shampoo to clean his prosthetic eye. *Id.*

On October 27, 2021, White was seen by Newby for a medication renewal visit. *Medical Records* at 7-8. Between July 13, when White was started on 600 mg gabapentin three times daily, and the October 27 medication renewal visit, White was not seen at sick call for any reason, including uncontrolled pain in his eye.[5] *Id.* at 6-7. At the October 27 visit, White requested naproxen for burning foot pain and a renewal of the gabapentin prescription, noting continued pain in his right eye.[6] *Id.* at 7-8. Newby renewed White's prescription for gabapentin. *Id.* at 7. The notes from the October 27 visit contain no evidence that White was argumentative, irritable, or inappropriate. *Id.* at 7-8. On November 2, 2021, Nunag saw White for medication renewal. *Id.* at 8. She noted that his gabapentin had been renewed already and did not note any complaints of uncontrolled eye pain. *Id.*

Between October 27, 2021, and March 7, 2022, White was not seen at sick call for any reason, including uncontrolled eye pain.[7] *Medical Records* at 8-9.

---

[5] He did have a chronic care visit with Newby on August 28, at which time current medications were to be continued and blood was drawn for labs. *Medical Records* at 7.

[6] At the hearing, White testified that even with pain medication, he still has pain in his eye. However, he stated that the gabapentin at 600 mg three times a day did provide relief. *Transcript* at 15.

[7] White was seen by Nunag on November 8, 2021, and February 21, 2022, for chronic care visits. *Medical Records* at 9. The reports from those visits contain no evidence that

Nunag saw White at a medication renewal visit on March 7, 2022. *Id.* at 9-10. She did not document any complaints made by White of uncontrolled eye pain. *Id.* Nunag noted "long term gabapentin use," and decided not to renew White's gabapentin prescription, to taper him off that drug, and to prescribe duloxetine instead. *Id; Transcript* at 17. According to Dr. Braswell, duloxetine is an anti-depressant that can be used to treat neuropathic pain. *Transcript* at 47-48. Nunag documented that White was not happy about this change. *Medical Records* at 9-10. The duloxetine was subsequently discontinued because White complained it caused him to have bloody stools. *Id.*

About two weeks later, on March 22, 2022, White saw Newby for medical renewal. *Id.* at 10. She documented that he was "angry, inappropriate w/use of profanity and aggressive." *Id.* He complained of "right eye 'fucking pain and I am shitting blood.'" *Id.* White demanded "to have Gabapentin restarted; angry, yelling and cursing at provider stating 'can you not fucking here, the fucking medicine is giving me the fucking blood in my shit ...'" *Id.* Newby discontinued duloxetine and ordered acetaminophen. *Id.* She stated that there was "[n]o clinical indication to restart Gabapentin …" *Id.* She also noted the appointment was ended due to White's use of profanity and aggressive behavior. *Id.*

---

White complained of uncontrolled eye pain. They also contain no evidence that White was argumentative, irritable, or inappropriate.

Nunag saw White in his cell for sick call three days later, on March 25, 2022, for complaints of blood in his stool and severe eye pain. *Medical Records* at 10. She documented that White was screaming "my fucking eyes hurt!" and "you took my gabapentin!" *Id.* Nunag ordered a fecal occult blood test and noted the duloxetine had already been discontinued. *Id.* She did not address White's complaints of severe pain and the visit was ended. *Id.*

Nunag saw White again on April 4, 2022, as a "walk in referral" complaining of discharge from his left eye. *Medical Records* at 10-11. Shampoo that was recommended by Dr. Hassenpflug was ordered for use in cleaning his left eye prosthesis. *Id.* According to Nunag, White asked "in an arrogant manner 'so, when are you going to send me to see the doctor?'" and stated "I don't want to see you, your just an APN, I need to see a doctor!!!!" *Id.* Nunag noted that White would be referred to the optometrist for an eye exam. *Id.* This visit was ended "due to inmate being arrogant and talking inappropriately to the provider." *Id.* White refused a sick call visit on April 7, 2022, according to notes entered by Newby. *Id.* at 11.

On April 13, 2022, White saw Dr. Gary Kerstein at sick call for complaints of extreme eye pain and his request for gabapentin. *Medical Records* at 11. Dr. Kerstein noted that White had been discussed at a case management meeting "regarding Gabapentin renewal for his alleged optic pain ..." *Id.* Dr. Kerstein's notes further state that

9

> IM alleged "I am in extreme pain". IM has been sitting next to me for 10 minutes as I finish another chart and he did not utter a word or moan and sat quietly in the seat motionless. I advised IM he did not appear to be in any pain and he then argues and I advised him I will start him on Gabapentin 300 mg QD at night and he immediately asks "you mean TID". I said no, once at night. He states "I don't want it once a day."

*Id*. Dr. Kerstein recorded that White refused his offer of gabapentin 300 mg QD and that Nunag witnessed the refusal. *Id.* At the evidentiary hearing, White testified that he did not refuse the gabapentin, but when he tried to explain once a day would not be sufficient, they marked him down as refusing it all together. *Transcript* at 21. He stated:

> And he renewed me . . . for gabapentin 300 one time a day. And then he went to hollering, you want it? You want it or not? You want – I said, I guess I might as well take it. Then when I get back he – because I explained to him, I said, one time a day ain't going to work with the pain I'm in. And I got to go on and take it with you because I'm not going to refuse you.
>
> And so he went off and everything. And next you know, I get back – I get – find out that he done – he put me on it, then he took me off of it. I had – I asked for all them doctor – I present to the doctor, give me a chance and he took me back off it and said I refused it.
>
> Nunag – and then I put a grievance on it, and Nunag wrote a statement said she heard me refuse. I know that – that's not the truth.
>
> Officer Evans was with me when he – because I was locked up, ASN and Officer Evans was with me right there when he . . . gave it to me again and all the sudden he took it back. So he must have known I was in pain. Why would he give it to me for one day and then take it back 30 seconds later?

*Id*.

One week later, on April 20, 2022, White saw Newby at sick call for his complaints of eye pain. *Medical Records* at 11-12. Newby noted he answered her questions with one-word responses and stated he was in pain repeatedly in a loud voice; she ended the visit due to his "unwillingness to appropriately interact with provider to assess need." *Id.* White put in another sick call on April 21, but was not seen due to security issues in his barracks; Nunag noted that he would be given Tylenol while waiting to be rescheduled. *Id.* at 12.

Dr. Hassenpflug examined White on April 25, 2022. *Medical Records* at 12 & 16. He noted that White's right eye pain was worse since gabapentin was discontinued in March and recommended a follow-up with the primary care provider to get back on gabapentin. *Id.* at 16. Nunag reviewed Dr. Hassenpflug's recommendation the following day and noted his recommendation. *Id.* at 12. She did not issue any orders. *Id.*

Newby then saw White on April 27, 2022 in sick call for his complaints of right eye pain. *Id.* at 12-13. She noted that he claimed the eye doctor said to give him gabapentin and was "inappropriately demanding 'gabapentin'." *Id.* at 12. She also noted his complaints of constant, unbearable, 10/10 pain and pressure. *Id.* She also noted that he refused duloxetine due to GI upset and refused Tylenol and Ibuprofen because they did not work. *Id.* Newby concluded there was no clinical indication for renewing gabapentin at that time, but that White may continue using

11

Tylenol. *Id.* According to Newby, White was unreasonable and unwilling to allow for education to be provided, and he was escorted out of the clinic. *Id.* Newby had a similar sick call visit with White on May 4, 2022, at which he claimed continued eye pain, requested gabapentin, and refused duloxetine, Tylenol, and Ibuprofen. *Id.* at 13. Newby recorded that White was angry and yelling that his pain was constant, 10/10, and unbearable. That visit was ended due to his reported use of profanity and "inappropriate and irrational behavior." *Id.*

At a chronic care visit with Dr. Benjamin Carlyle on May 20, 2022, White requested an update on the status of seeing an eye doctor for red and black spots in his right eye as well as dizziness. *Id.* at 14. Dr. Carlyle informed White he had an optometry visit pending and to follow-up with a sick call if his symptoms worsened. *Id.*

On May 27, 2022, Nunag saw White for his complaints of eye pain and request for gabapentin because Tylenol did not work. *Id.* She noted that gabapentin would not be renewed. *Id.* She also stated that he "overtalks," was throwing temper tantrums, and was not listening to her. *Id.*

During the evidentiary hearing, White testified that he believed Newby and Nunag did not have to give him a reason for denying him effective pain medication, and that they were "stuck on Tylenol" despite his complaints that it did not work and caused him to have blood in his stool. *Transcript* at 26-28. He also testified that he

repeatedly asked to be sent back to the Jones Eye Clinic for additional treatment, but was refused. *Id.* at 19-20, 28-30.

      Dr. Braswell, who is a general practitioner and not an eye expert, testified that he reviewed White's records from the Jones Eye Clinic as well as his Cummins Unit medical records. *Transcript* at 37-39. He said White was last seen at the Jones Eye Clinic on May 31, 2019, and had not been treated for pain there since early 2019. *Id.* at 40-41. Dr. Braswell testified that White was taking 50 milligrams of tramadol twice a day when he had his first medical visit on March 31, 2021, at the Cummins Unit. *Id.* at 41. He explained that tramadol is an opiate best used for acute pain in the short term, and that a patient may develop tolerance due to it, constantly needing more. *Id.*

      Dr. Braswell testified that Newby's notes from the March 31 visit indicated she changed White's medication from tramadol to gabapentin because White still had pain in his eye despite having been on tramadol for nine years. *Transcript* at 43-44. Dr. Braswell then explained that gabapentin is a seizure drug used for other complaints such as nerve pain. *Id.* at 44-45. He testified that gabapentin was an appropriate drug to treat White's pain as was increasing the dosage to find an effective dose. *Id.* at 46. Dr. Braswell noted that White continued to complain of pain and was briefly switched to duloxetine, which is similar to gabapentin, by Newby in March 2022. *Id.* at 47-48. He also testified that both gabapentin and

duloxetine only treat pain and do not have any affect on White's underlying medical condition, glaucoma. *Id.* at 49-50. Dr. Braswell did not note any specific complications from long-term use of gabapentin, but testified that the long-term use pain medications can cause various complications and that some patients report less pain after quitting all pain medications. *Id.* at 51-52.

Dr. Braswell concluded that Nunag and Newby had treated White appropriately, but also acknowledged that he had no experience in what treatment might be most appropriate in a prison setting. *Transcript* at 52, 61-62, 64. He specifically opined that gabapentin was a reasonable alternative to tramadol and that it "seemed to work pretty darn well" for White. *Id.* at 61. He also thought duloxetine may have worked well at a higher dosage. *Id.*

## II.  Legal Standard

The granting of injunctive relief is an extraordinary remedy, particularly in a prison context. *See Goff v. Harper*, 60 F.3d 518 (8th Cir. 1995). In that context, a request for injunctive relief must be viewed with great caution because judicial restraint is called for in dealing with the complex and intractable problems of prison administration. *See Id.* The burden of proving a preliminary injunction is warranted rests on the movant. *Id.* at 520.

In considering whether to grant such relief, the Court must consider the following factors: (1) the threat of irreparable harm to the movant; (2) the state of

the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). The Prison Litigation Reform Act ("PLRA") also requires that injunctions with respect to prison conditions be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(1).

### III. Analysis

Having considered the facts as alleged by White in light of the *Dataphase* factors along with the testimony and White's Medical Records, the undersigned finds that preliminary relief is warranted at this time.

The Court first addresses the likelihood of White's success on the merits with respect to his Eighth Amendment deliberate indifference claim.[8] To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the

---

[8] Although White also sues for retaliation, the Court need not evaluate the likelihood of White's success on his retaliation claim at this juncture; because the only issue before the Court is whether White needs effective pain medication pending the outcome of this case, no evidence was introduced regarding White's retaliation claim, including the Defendants' alleged retaliatory motive.

inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (holding that negligence in diagnosis or treatment of medical condition is not sufficient to establish a constitutional violation).

White's medical records show that he has been treated for pain in his right eye for well over 10 years. This alone supports his claim that he has a serious medical need. Furthermore, Dr. Braswell acknowledged that the placement of pumps behind the eye may well cause pain. He also noted that Dr. Hassenpflug had described White's eye pumps as a "legitimate" source of pain warranting pain medication. *Transcript* at 56. Finally, the Defendants have not asserted that White's eye pain is not a serious medical need. *See* Doc. No. 12.

It is clear that both Defendants were aware of White's complaints of eye pain and his requests for effective medication to control his pain. Tramadol, a narcotic, appears to have been stopped due his long-term use of it and the development of a tolerance to it. After approximately eleven months of gabapentin use, Nunag

recommended White switch to duloxetine. The reason for discontinuing gabapentin is not clear – on the March 7, 2022 record, Nunag noted "long term gabapentin use." *Medical Records* at 9. Gabapentin is not a narcotic. When White did not tolerate duloxetine, he requested to be placed back on gabapentin. At this point, his pain treatment effectively ended. Going forward, he became increasingly upset according to the Defendants' notes, and they continued to only provide Tylenol or Ibuprofen, medications White maintained were ineffective. And while an optometrist indicated gabapentin should be renewed during an April 2022 exam, that recommendation was not followed. The Court finds it significant that White did not complain of severe eye pain while he was on the highest dose of gabapentin between July 14, 2021, and March 7, 2022. *Medical Records* at 6-9. Additionally, his records do not indicate that he was uncooperative or verbally abusive during this time; rather, his behavior worsened after his gabapentin prescription was canceled. And while his behavior and use of language were deemed inappropriate, and at times understandably so, they also support a finding that his poor behavior and anger was related to the significant amount of pain he claimed to be experiencing.

Defendants have provided no testimony to explain why they did not consider continuing to prescribe White a medication which worked reasonably well at a dosage of 300 mg QID. Furthermore, Dr. Braswell noted no complications from the long-term use of gabapentin. Simply put, the Defendants knew White had taken a

narcotic pain medication for a number of years for severe pain. They knew that his optometrist and Dr. Beck (in his one visit) supported ongoing treatment of pain with gabapentin. They knew that White did not complain of severe pain during the months that he took the 300 mg QID gabapentin. They knew that he did not act inappropriately or use improper language or exhibit anger while he was taking that dosage of gabapentin. These facts support a finding that White's pain was managed, while not alleviated, while taking gabapentin. So why take White off this medication? The only entry regarding discontinuance of gabapentin referred to its long-term use but provided no specific details of why long-term use was problematic. And the Defendants' expert, their only witness, offered no testimony to establish the existence of significant adverse effects of the long term use of gabapentin. With no explanation for their actions, the Defendants' refusal to even attempt to treat White's pain with anything other than Tylenol or ibuprofen in the face of his continuing complaints of severe pain could support a finding of deliberate indifference as opposed to a mere disagreement in treatment. Accordingly, White has demonstrated that he may well be successful on the merits of his deliberate indifference claim.

The Court further concludes that White may face irreparable harm in the form of long-term and continuing severe pain resulting from the refusal of the Defendants to provide effective pain medication. Additionally, there is no evidence before the

Court that granting White preliminary relief would significantly burden the Defendants. Finally, it is in the public interest to ensure that a party's constitutional rights are protected. *See Calvert v. Paniagua,* No. 2:17CV2 HEA, 2018 WL 2121508, at *11 (E.D. Mo. May 8, 2018) (citing *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012)).

## IV. Conclusion

Accordingly, the Court grants White's motion for a preliminary injunction. The Defendants shall take steps, within 10 days from the date of this order, to evaluate, develop, and implement a plan of care that will appropriately address White's severe pain.

IT IS SO ORDERED this 19th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE