# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**RODERICK WHITE**                                                                       **PLAINTIFF**
ADC #092057

v.                              No: 4:22-cv-00613 PSH

**LERIZZA NUNAG,** *et al.*                                                              **DEFENDANTS**

## ORDER

Pending before the Court is a motion filed by Plaintiff Roderick White seeking to compel compliance with a Court order, default judgment, and monetary sanctions ("Motion to Compel") (Doc. No. 41). The Court held a hearing on this motion on April 24, 2023. Plaintiff and his court-appointed counsel, Marjorie E. Rogers, were present. Counsel of record for the Defendant, Kynda Almefty, was not present; Jeff Hatfield appeared in her place. No evidence was introduced, and at the close of the hearing, I requested that Defendants provide a complete copy of White's medical records since December 2022 under seal. They have done so (Doc. No. 56).

On November 15, 2022, I held a hearing on a motion for injunctive relief filed by White. *See* Doc. Nos. 5 & 24. On December 19, 2022, I granted a preliminary injunction and ordered Defendants "to evaluate, develop, and implement a plan of care that will appropriately address White's severe pain." Doc. No. 35 at 19. In that Order, I summarized the evidence produced at the November 15 hearing. I noted

that White did not complain of severe pain for a seven-month period while he was on 600 mg of gabapentin three times daily.[1]  *Id.* at 7-8, 17.  I also noted that White's behavior was better during this period and that the Defendants provided no explanation for removing White's gabapentin prescription in March 2022.  *Id.* at 17-18.  I also described White's testimony that he believed the drug duloxetine caused him to have bloody stools.  *Id.* at 8.

On December 28, 2022, the Defendants filed a response to my Order, stating that White had been prescribed 300 mg gabapentin once a day, which was increased to 300 mg twice a day on December 23.  Doc. No. 36.  The Defendants also stated that White was referred to the Jones Eye Institute at the University of Arkansas for Medical Sciences (UAMS) on December 19, and that White had an appointment there scheduled for January 11, 2023.  *Id.*  The Defendants further stated that "[o]rders and recommendations from the Jones Eye Institute will be reviewed to develop a further plan of care."  *Id.*

On January 24, 2023, White filed a notice with the Court stating that he was still in pain as of January 18, 2023, and wanted to know what the plan of care was to address his pain.  Doc. No. 37.  The Defendants filed a response on January 27, 2023, stating that White continued to receive gabapentin and was seen by

---

[1] In my December 19 Order, I mistakenly stated that 300 mg gabapentin QID (four times daily) worked reasonably well (Doc. No. 35 at 17), but the evidence was that 600 mg of gabapentin TID (three times daily) was reasonably effective.  *See id.* at 7.

2

ophthalmologist Carina Torres Sanvicente, M.D. at the Jones Eye Institute at UAMS on January 11, 2023. Doc. No. 38. The Defendants stated that Dr. Sanvicente did not make any recommendations as to pain medication or other pain management; they attached a copy of the medical record from that visit. *Id.*

On February 13, 2023, White filed his Motion to Compel, alleging that he still continued to experience pain and had been placed on a lower dosage of gabapentin than he previously testified had helped his pain. *See* Doc. No. 41. He insists that 300-600 mg[2] of gabapentin twice a day is not sufficient to treat his pain. *Id.* at 5-6. White also filed a notice on February 21, 2023, stating that he complained to Dr. Kerstein of continued eye pain, and Dr. Kerstein removed his gabapentin prescription. Doc. No. 45.

On February 22, 2023, I appointed Rogers to represent White (Doc. No. 44). I then ordered Defendants to file a response to White's Motion to Compel (Doc. No. 46). In their response (Doc. No. 47), they argued that action was taken "to evaluate, develop, and implement a plan of care" in that White was prescribed gabapentin until March, when he was then prescribed duloxetine by Dr. Kerstein, and he was seen by an ophthalmologist at UAMS. *Id.* at 3. They attached copies of: a drug prescription order dated December 29, 2022, for 600 mg gabapentin twice a day (Doc. No. 47-

---

[2] White referred to 300 ML and 600 ML dosages of gabapentin in his Motion to Compel. There is no evidence he was ever prescribed milliliters (ML) of gabapentin.

3

1); Dr. Sanvicente's January 11, 2023 record (Doc. No. 47-2); and the February 14, 2023 record from White's visit with Dr. Kerstein, in which Dr. Kerstein noted that White reported gabapentin was not working and Dr. Sanvicente did not recommend any pain medications (Doc. No. 47-3). Dr. Kerstein also noted in that record: "I feel [White] is exhibiting drug seeking behavior and there is no clinical indication for the med."

With the assistance of his counsel, White filed a reply on March 31, 2023 (Doc. No. 51). He argued he has not received an adequate evaluation, development or implementation of a plan that addresses his severe pain.

At the April 24 hearing, neither party put on evidence. I asked Defendants' counsel what treatment plan had been developed, and he only recited the 300-600 mg of gabapentin White received, the UAMS evaluation, and Dr. Kerstein's switch to duloxetine. He also noted that the Defendants are not personally treating White any longer due to his allegations of retaliation.

Whether or not the Defendants have complied with my December 19 Order remains in question. White's medical records indicate that he has consistently complained of pain in his right eye since the November 15 hearing. Doc. No. 56 at 259-264, 268, 288, 293-298, 331-335, 338-341, & 352-354.[3] On January 30, 2023,

---

[3] Because these medical records were filed under seal, the page numbers refer to the Bates numbers at the bottom right-hand side of the records.

White told LPN Christina Thrower that gabapentin twice a day did not work well, but three times a day did. *Id.* at 288. On February 15, 2023, White informed LPN Carol Davis:

> MY RIGHT EYE IS IN SEVERE PAIN AND THE DR ON 2-14-23 HE TOLD ME HE WAS DISCONTINUING MY GAVAPENTIN 600 TWICE A DAY BECAUSE I TOLD HIM THAT 600 TWICE A DAY WAS NOT WORKING AND I NEEDED 600 3 TIMES A DAY LIKE I KNOW IT GAVE ME SOME KIND OF RELIEFE OF THIS SEVER PAIN THAT UNITED STATES MAGISTRATE JUDGE PATRIC HARRIS GAVE THE ORDER ON DECEMBER 19, 2022 THAT THE HAD TO IMPLIMENT A PLAN WITHIN 10 DAYS TO GIVE ME RELIEF OF MY SEVER PAIN.

*Id.* at 293. White made this point again on March 2, 2023. *Id.* at 295. White's records also indicate that he was examined by an optometrist, Dr. Hassenpflug, on March 1, 2023, and that Dr. Hassenpflug recommended White re-start gabapentin. *Id.* at 264. His recommendation was rejected by Dr. Kerstein. *Id.*

Having reviewed White's medical records, I question whether the Defendants have taken sufficient action to address White's ongoing complaints of pain. I have not seen evidence of a plan of treatment to address White's severe pain. Instead, it appears that White was provided gabapentin at a lower dose than had helped him in the past and a offered a medication that had previously resulted in significant side effects. The medical records provide no explanation for the finding by Dr. Kerstein that White is drug seeking, and why an increased dose of gabapentin, which had been effective in the past, was not tried. Additionally, it is unclear whether the

ophthalmologist at Jones Eye Center was asked to evaluate White's pain and offer recommendations. Accordingly, I will schedule a second hearing on White's Motion to Compel. The Defendants' counsel of record must personally appear at that hearing. Additionally, Defendants' counsel should be prepared to present evidence and testimony to answer the following questions:

(1) What is the plan of care to address White's continued complaints of pain?

(2) Did medical staff specifically request the ophthalmologist at UAMS to evaluate White's complaints of pain when he was sent there for follow-up after the preliminary injunction was issued?

(3) Why did Dr. Kerstein discontinue White's gabapentin prescription completely instead of increasing it to a dosage that previously worked (*i.e.*, 600 mg three times daily)?

(4) Why did Dr. Kerstein prescribe duloxetine again, knowing that White reported adverse side effects the last time he took it?

(5) Why did Dr. Kerstein decide White was drug seeking instead of experiencing pain?

(6) Why was the optometrist's recommendation for gabapentin disregarded?

Once I have taken evidence on these issues, I will determine whether the Defendants have complied with my December 19 Order, whether or not civil contempt sanctions are appropriate,[4] and whether further preliminary relief is warranted. I am also willing to entertain a motion for an independent medical evaluation pursuant to Fed. R. Civ. P. 35.

IT IS SO ORDERED this 2nd day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] The United States District Court in Minnesota has explained:

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Id. See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Civil ... contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."). The Court may also impose civil contempt sanctions to compel future compliance with Court orders. *United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994). As with the decision whether to impose sanctions, the choice of sanction imposed is within the Court's discretion. *Murphy by Murphy v. Piper*, No. 16-2623, 2018 WL 2278107, at *3 (D. Minn. May 18, 2018). When imposing a coercive sanction, "the Court has broad discretion to design a remedy that will bring about compliance." *United States v. Open Access Tech. Int'l, Inc.*, 527 F.Supp.2d 910, 913 (D. Minn. 2007).

*Bricklayers & Allied Craftworkers Serv. Corp. v. W. River Masonry, Inc.*, No. CV 22-760 (JRT/JFD), 2022 WL 17555487, at *1 (D. Minn. Dec. 9, 2022).